## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

JASON FLORES,               §
                            §
     *Plaintiff*,             §
                            §
v.                          §
                            §
CAPITAL MACHINE TECHNOLOGIES, §     CASE NO. 2:24-CV-00081-RSP
INC., ACCURPRESS, *and* ACCURPRESS §
AMERICA,                    §
                            §
     *Defendants*.           §

## MEMORANDUM ORDER

Before the Court are the Accurpress Defendants' Motion to Exclude Plaintiff's Expert Economist Lisa McGuff's Testimony and Brief in Support ("McGuff *Daubert*"), **Dkt. No. 75**, Motion to Strike and *Daubert* Challenges ("Lake *Daubert*"), **Dkt. No. 71**, Motion for Partial Summary Judgment ("Failure to Warn MSJ"), **Dkt. No. 76**, Motion for Summary Judgment ("Causation MSJ"), **Dkt. No. 77**, and Defendant Capital Machine Technologies, Inc.'s Motion for Summary Judgment ("Innocent Seller MSJ"), **Dkt. No. 74**. The Motions are fully briefed, and the Court held a motion hearing on March 5, 2026. For the following reasons and for the reasons set forth during the hearing, the Failure to Warn MSJ is granted as to Plaintiff's strict liability claim for marketing defect and denied otherwise, and all other Motions are denied.

### I.    LEGAL STANDARDS

A. *Daubert* Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." Fed. R. Evid. 702. Courts have broad discretion to make determinations about whether an expert's proposed testimony satisfies Rule 702. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 152 (1999); *Daubert*, 509 U.S. at 592–93 (1993).

The appropriate factors to consider are dictated by the question of whether the expert's testimony is sufficiently reliable and relevant for the jury to consider; the Court's role under *Daubert* is limited to that of a gatekeeper. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. . . . Thus, . . . a trial court must take care not to transform a *Daubert* hearing into a trial on the merits"). As the Supreme Court explained, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite being relevant and reliable under *Daubert* and Federal Rule of Evidence 702, evidence may still be excluded for violating the Federal Rules of Civil Procedure. *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

B.  Motion for Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is *no genuine dispute as to any material fact* and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). "[T]he

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis added). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat summary judgment. *Id.* at 248. A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

## II.    DISCUSSION

A.  McGuff *Daubert* (Dkt. No. 75)

Accurpress raises several arguments for excluding Ms. McGuff's damages opinions. Dkt. No. 75 at 6–13. First, Accurpress argues that Ms. McGuff's earning capacity analysis should be excluded under *Daubert* because she allegedly failed to calculate damages as a measure of Plaintiff's future earning potential subtracted from his past potential. *Id.* at 6–8. Second, Accurpress complains that these same capacity opinions are improper because Ms. McGuff assumed he would be employed as a "steel worker" until the age of sixty-seven, a job in which he had his highest earnings, and which he left before the time of his accident. Id. at 10–12. Third, Accurpress argues that Ms. McGuff's analysis of household labor should be excluded because she allegedly does not account for Plaintiff's post-injury capability to perform household labor. *Id.* at 8. Fourth, Accurpress argues that Ms. McGuff's earning capacity and household labor analyses should be excluded under Rule 403 because such analyses will be "confusing and misleading" without comparison to Plaintiff's post-injury abilities. *Id.* at 9–10. Fifth, Accurpress argues that Ms. McGuff's prosthetics opinions should be excluded because Mr. Lake's opinions should be excluded. *Id.* at 12.

As the Court explained during the hearing, loss of earning capacity is different from lost wages, and, while it is helpful to compare after-injury earnings, that is not required here. *See Matbon, Inc. v. Gries*, 288 S.W.3d 471, 486 (Tex. App.—Eastland 2009) ("[E]ven an unemployed person can recover for lost earning capacity." (citations omitted)); *Lowery v. Spa Crafters, Inc.*, No. Civ. A  SA03CA0073, 2004 WL 1824382, at \*1 (W.D. Tex. Aug. 16, 2004) ("While *recovery for loss of future earning capacity does not require a showing of lost earnings*, if plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss may *best* be shown by comparing his actual earnings before and after his injury."). Plaintiff counsel also persuasively raised during the hearing that there will be evidence that his current position is as a sheltered employee, which could end prematurely and may not properly reflect his future earnings. Moreover, Ms. McGuff's calculations represent familiar calculations within the purview of an economist based on actuarial data that is typical in a tort case such as this one. And because the Court denies the Lake *Daubert*, as explained below, the Court need not reach Accurpress's fifth argument.

Therefore, for these reasons and the reasons set forth during the hearing, the Court finds that Ms. McGuff's earning capacity and household labor opinions are sufficiently relevant and reliable to survive *Daubert*. The Court also finds that the probative value of such opinions is high, while the danger of them being "confusing and misleading" is low, such that Rule 403 does operate to filter them out. Accordingly, the McGuff *Daubert* (Dkt. No. 75) is **DENIED**.

B.  Lake *Daubert* (Dkt. No. 71)

Accurpress levies similar Rule 702 and 403 arguments against Plaintiff's prosthetics expert, Mr. Lake. Dkt. No. 71 at 4–7. First, Accurpress argues Mr. Lake's opinion that Plaintiff needs prosthetics is unreliable because he did not consult "treating physicians" or conduct "functional capacity exams." *Id.* at 4–5. Second, Accurpress complains that Mr. Lake's opinions

4

on the maintenance costs (ranging from 10–20% of the cost of the prosthesis) of the three he recommends are based solely on his experience and are inconsistent with alleged normative industry data (reflecting 3%). *Id.* at 5–7. During the hearing, Accurpress's counsel raised an additional argument that Mr. Lake's opinions on the prosthesis are unreliable because Plaintiff has not had an amputation yet in the two-and-a-half years since his accident, which is a prerequisite to fitting a prosthesis.

The last argument improperly assumes Plaintiff could afford an expensive and potentially elective amputation surgery, given his circumstances. Neither that argument nor the others justify exclusion. *See BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981, 2024 WL 1809499, at *8 (N.D. Tex. Apr. 24, 2024) ("[F]or expert testimony on topics that lack . . . exactness . . . courts should consider factors such as the expert's professional experience . . . . Rule 702 does not prohibit an expert from reaching an opinion based on the expert's experience,' and 'a witness's experience . . . can provide a reliable basis . . . .'" (citations omitted)); *Smiley v. N.H. Ins. Co.*, No. 17-CV-1094, 2021 WL 292449 (M.D. La. Jan. 28, 2021) ("Simply disagreeing with the underlying facts relied on . . . is not grounds for excluding [an] expert under *Daubert*." (citation omitted)); *Burroughs Diesel, Inc. v. Baker Petrolite, LLC*, No. 2:18-CV-26, 2019 WL 5395452 (S.D. Miss. Oct. 22, 2019), (citation omitted) ("An expert's failure to conduct testing does not necessarily render his opinion unreliable."). While Accurpress raises a slew of additional arguments, Dkt. No. 71 at 7–8, it provides no basis for such arguments grounded in Mr. Lake's opinions or the facts, and Plaintiff sufficiently rebuts them in its response, *see* Dkt. No. 82 at 1–7, so the Court does not address them further. Similarly, for these reasons and the reasons set forth during the hearing, the Court finds that Mr. Lake's prosthetics opinions are sufficiently reliable. Thus, the Lake *Daubert* (Dkt. No. 71) is **DENIED**.

C.  Failure to Warn MSJ (Dkt. No. 76)

First, Accurpress argues that it had no duty to warn Plaintiff because the risk was "open and obvious," as there is a "pinch point where the ram comes down to bend the sheet metal," and Plaintiff knew "that the subject press brake did not have a light curtain or presence sensing device," "was trained on how to operate" it, and knew "that his hand would be crushed if he placed it in the point of operation" but did so anyway. Dkt. No. 76 at 9, 11. Second, Accurpress argues that any alleged failure to warn was not a cause of Plaintiff's injury because "Plaintiff was aware of the risk of placing his hand in the point of operation and did so anyways," so Plaintiff cannot show that had there been a warning, he would not have been injured. *Id.* at 11–12. Third, Accurpress argues that Plaintiff cannot prove his marketing defect claims because he has not proffered expert testimony on what rendered the product unreasonably dangerous, whether the warning and instructions provided were sufficient, and whether such warnings caused Plaintiff's injuries. *Id.* at 12–13. Fourth, Accurpress argues that it cannot be liable for a marketing defect because it warned operators not to put "any part of their body" "in the point of operation" "without adequate safeguarding" and "unless the brake is de-energized" or it may result in "severe crush injuries," and Plaintiff did exactly that, resulting in the same type of harm it warned against. *Id.* at 14.

Plaintiff first responds that the risks were not "open and obvious" because the question is objective, not based on Plaintiff's subjective awareness, and a specific heightened, non-obvious, risk, that was not warned against, existed for operation in "multiple users" mode and in "foot" mode. Dkt. No. 91 at 6–8. Second, Plaintiff responds that, as to causation, while he was generally aware of the danger, the "issue is really whether the machine should be in operation at all in its unguarded state," and Accurpress's failure to warn of safe operating procedures in accordance with OSHA (rather than the 4 inches instruction) caused his injuries. *Id.* at 9–10. Third, Plaintiff responds that its own expert opined during deposition that a user manual that merely references

6

OSHA and ANSI standards and "push[es] down responsibility for labeling and guarding to an end user" could be inadequate, that the manual should have had a warning about needing additional guarding when used by more than one person, and that Accurpress's expert admitted that conflicting information in training and warnings can create confusion. *Id.* at 10–11. Fourth, Plaintiff argues that Accurpress's warnings were not adequate because such warnings left end users with the "incorrect impression that they were operating a compliant press brake correctly and safely." *Id.* at 11–12.

While Plaintiff is correct that Texas law only requires expert evidence of a marketing defect claim in strict liability cases, or in negligence cases where the alleged negligence is not within the experience of a layman, *Ethicon Endo-Surgery, Inc. v. Gillies*, 343 S.W.3d 205, 211 (Tex. App.—Dallas 2011), the Court finds that the expert testimony Plaintiff points to is lacking as to several elements of a strict products liability marketing defect claim, *Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 825 (Tex. App.—Fort Worth 2018), *aff'd*, 627 S.W.3d 197 (Tex. 2021). Specifically, the experts' opinions fail to establish that "(3) the product contains a marketing defect (4) the absence of a warning and/or instruction renders the product unreasonably dangerous to the ultimate user . . . and (5) the failure to warn and/or instruct constitute a causative nexus in the [plaintiff]'s injury." *Id.*

Thus, summary judgment is proper as to strict liability on this basis. As to the negligence claim, the Court finds that the source of the marketing negligence claim, as Plaintiff characterizes it— the risk of injury from the press in its unguarded state in the absence of a warning not to use it in such state and whether that absence caused Plaintiff's subsequent injury—does not require "a technical or scientific explanation; it is within the jury's ability to determine on its own what caused the accident and resulting injuries." *Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 161

7

(Tex. App.—Eastland 2009) (citation omitted). Genuine disputes of material fact as to those issues remain and defeat summary judgment on the negligence claim; Accurpress's other arguments to the contrary are unpersuasive.

Consequently, for those reasons and for the reasons set forth during the hearing, the Court finds that Accurpress's Failure to Warn MSJ (Dkt. No. 76) should be and hereby is **GRANTED** as to no strict product liability for a marketing defect and **DENIED** otherwise.

D.  Causation MSJ (Dkt. No. 77)

Accurpress raises two arguments for a lack of causation. Dkt. No. 77 at 11–16. First, Accurpress argues that nonparty ACS (Plaintiff's employer) is the sole cause of Plaintiff's injuries because "Accurpress offered optional presence sensing devices that ACS did not purchase," "ACS had an obligation under OSHA to ensure the [press] was adequately guarded based on" its use, it "agreed to provide all necessary point of operation guarding", and ACS added but subsequently removed guarding from the device of its own accord, after which Plaintiff was injured. *Id.* at 12–14. Second, Accurpress argues that its own conduct and the alleged design defect in the press were not substantial factors in causing Plaintiff's injuries, this time urging that, because ACS failed to purchase the optional equipment, recognized a safety issue and installed guarding but subsequently removed it for various reasons, that "to the extent that someone is responsible for the fact that the [press] did not have a presence sensing device, . . . [it] is ACS and ACS alone." *Id.* at 14–16. In both arguments, Accurpress depends heavily on and analogizes to *Werner Enters., Inc. v. Blake*, 719 S.W.3d 525, 528 (Tex. 2025). Dkt. No. 77 at 11–14.

However, *Werner* is not analogous. It involved the suit of a passenger in a first vehicle, which crossed a median into the path of a large truck. *Werner*, 719 S.W.3d at 529. Though the court found that the truck driver's speed was negligent, and "but for" him driving at that speed the accident would not have occurred, the court declined to find it a "substantial factor" because all of

the truck driver's negligence occurred before the driver of the first vehicle's own negligence in causing him to lose control of his own vehicle and cross a "42-foot grassy median into oncoming highway traffic." *Id.* at 534. As Plaintiff persuasively points out, Dkt. No. 90 at 8–9, the court declined to extend its holding to even analogous automobile cases involving design defects. *Werner*, 719 S.W.3d at 536 n.4 ("If the allegation were that a defect in the design of either vehicle contributed to the injuries, . . . our analysis of causation would require additional considerations . . . ."). If Accurpress's theory were correct, that a user of a product cannot make out causation for a defect claim for injuries occurring "seven years later," Dkt. No. 77 at 15, then seldom could any design defect claim be allowed. But that is not the law. *See Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257–60 (Tex. 1999).

Plaintiff's counsel also persuasively pointed out during the hearing that ACS subsequently installed another guarding system on the press after Plaintiff's injury, which has remained in place since that time and has not had the same drawbacks as the previously installed third-party guarding system that Accurpress references in briefing. Plaintiff's counsel further pointed to evidence that other manufacturers that compete with Accurpress install such guarding from the factory, despite Accurpress's arguments to the contrary. Based on these facts, the Court finds that a genuine dispute of material fact remains at least as to whether an after-market guard installed by ACS is of the same quality and effectiveness as the guard that would have been originally installed by Accurpress from the factory or by Accurpress or Capital at the time of installation of the press.

Accordingly, for these reasons and for the reasons orally assigned at the hearing, Accurpress's Causation MSJ (Dkt. No. 77) is **DENIED**.

E.  Innocent Seller MSJ (Dkt. No. 74)

Capital next argues it qualifies as an innocent seller under Texas Civil Practice and Remedies Code Section 82.003 ("Statute"). Dkt. No. 74 at 10–19. During the hearing, Capital's

counsel argued that Plaintiff failed to specifically plead exceptions it now relies on to the Statute, is barred from doing so now, and summary judgment is therefore proper that it is an innocent seller under the Statute and immune from liability in this action. Capital's counsel pointed to *George v. SI Group, Inc.*, 36 F.4th 611, 620 (5th Cir. 2022), as requiring Plaintiff's affirmative pleading, rather than its own pleading as an affirmative defense. Capital's entire argument, in briefing and during the hearing, is based on the proposition that Plaintiff must specifically plead each exception it intends to argue, either by verbatim recitation of language or by reference to the exception.

However, in *George*, the Fifth Circuit stated that, because the Statute "is not an affirmative defense" but a "cause of action under the substantive law of products liability in Texas," it must be pleaded "*unless*" the plaintiff "pleaded facts establishing [the defendant]'s liability as a 'nonmanufacturing seller.'" *George*, 36 F.4th at 620 (emphasis added); *id.* 620 n.5. It is therefore sufficient to plead facts establishing Capital's liability, rather than to reference the exception relied upon by number or by bare recitation of language. During the hearing, Plaintiff's counsel indicated certain paragraphs of the Complaint factually support several of the exceptions.

The Court finds persuasive that at least exception (5) is directly supported by paragraph 35(a) of the Complaint. Exception (5) reads "that: (A) the seller made an express factual representation about an aspect of the product; (B) the representation was incorrect; (C) the claimant relied on the representation in obtaining or using the product; and (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm." Tex. Civ. Prac. & Rem. Code Ann. § 82.003 (Vernon). Paragraph 35(a) of the Complaint accuses Capital of making "express factual representation about the press's safety," i.e., instructed ACS that staying four inches from the point of operation was all that was needed for safe operation, "the representation was incorrect," it was "relied upon by

ACS" and "if the dangerous aspect of the press (i.e., its lack of a light curtain and/or laser guard) had been as represented, Plaintiff would not have been harmed." Dkt. No. 41 at 35(a). There is sufficient evidence in the record to support that factual contention such that summary judgment is not proper that Capital is an innocent seller under the Statute. Accordingly, Capital's Innocent Seller MSJ (Dkt. No. 74) is **DENIED**.

### III.    CONCLUSION

For the reasons provided above and during the hearing, the McGuff *Daubert* (Dkt. No. 75) is **DENIED**; the Lake Daubert (Dkt. No. 71) is **DENIED**; the Failure to Warn MSJ (Dkt. No. 76) is **GRANTED** as to there being no strict product liability for a marketing defect and **DENIED** otherwise; the Causation MSJ (Dkt. No. 77) is **DENIED**; and the Innocent Seller MSJ (Dkt. No. 74) is **DENIED**.

**SIGNED this 16th day of March, 2026.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE